244

561 A.2d 325

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John McLAIN, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1989.

Decided June 27, 1989.

Gary Robert Fine, Wiker & Fine, Greensburg, for appellant.

John J. Driscoll, Dist. Atty., Rita Donovan Hathaway, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

This appeal raises again the issue of when the Rape Shield Law bars evidence of consensual sexual relations which occurred shortly before an alleged rape. Appellant argues that he was improperly precluded from introducing evidence of prior relations between himself and the prosecutrix to explain the objective signs of intercourse. We would hold that appellant failed to overcome the bar of the Rape Shield Law, and would therefore affirm.

John McLain, the appellant, was charged with rape, assault, and false imprisonment. The prosecutrix was a slightly retarded woman who lived in appellant's bedroom in a household consisting of appellant's mother, brother, and the couple. The prosecutrix claimed that on or about July 5, 1984, appellant and his brother Roger beat her, raped her, and left her locked in a bedroom, from whence she escaped through a window.

At the time of trial, appellant's counsel filed a motion and offer of proof regarding prior consensual relations between appellant and the prosecutrix. Counsel stated that, until the prosecutrix testified, he could not specify precisely how such testimony would be admissible under the Rape Shield Law, as there was confusion as to the exact date when the alleged rape occurred. Counsel did not assert a defense based on consent, but rather denied that any sexual acts occurred on July 5 or 6, 1984. The trial court therefore ruled, without holding an in-camera evidentiary hearing, that the proferred testimony was inadmissible under the Rape Shield Law, which permits evidence of an alleged victim's past sexual conduct with the defendant only when

consent of the alleged victim is at issue. 18 Pa.C.S. § 3104(a).[1]

The background of the incident was developed at appellant's trial. For many months prior to July, 1984, the prosecutrix visited appellant's home, often in the company of her sister Sharon who was a close friend of appellant's brother Roger. They visited virtually every weekend, usually staying the entire weekend and sometimes longer. On or about June 1, 1984, the prosecutrix moved into appellant's home and established her residence in appellant's bedroom. She valued the freedom she enjoyed with appellant's family over the strictures imposed by her own mother. On June 5, 1984, and once again later in the month, the prosecutrix's mother contacted the Pennsylvania State Police concerning the welfare of her daughter, and Trooper Graham was detailed to investigate. Twice he visited appellant's home and interviewed the prosecutrix to determine whether she was under duress, and concluded that she was happy in the circumstances and was voluntarily living with appellant. The prosecutrix enjoyed the efforts of appellant and his brother to teach her to tell time, to read, to write, to draw, and to do arithmetic. When they set problems for her to work out, she would diligently do the "homework," then proudly offer it to be graded. To improve her appearance and self-image, appellant and his

1. **18 Pa.C.S. § 3104. Evidence of victim's sexual conduct**

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

brother cut, dyed, and styled her hair; appellant helped her apply make-up; he took her to parties and cookouts in the neighborhood. They began to talk of marriage.

Despite such amity, discord developed because the prosecutrix had little money. Her mother received a monthly SSI check on behalf of the prosecutrix, which the mother applied to household expenses except for the few dollars she allowed the prosecutrix as spending money. Several times in June, appellant contacted the Social Security Administration and the prosecutrix's mother in an attempt to learn what happened to her June payment and to amend the payment process to direct payment to the prosecutrix at her new address. He succeeded only in prompting the Social Security caseworker to withhold the prosecutrix's July payment until the situation was resolved and the prosecutrix established a permanent address.

The arrangement ended abruptly on Friday, July 6, 1984. According to the prosecutrix, the appellant and Roger took her into appellant's bedroom, tied her wrists behind her back, beat her with wet towels, bit her breast, and raped her. She defined the term "rape" by explaining that "he put his peepee in." She later admitted that they did not tie her hands, but that Roger held her hands down while John raped her, then John remained in the room drinking coffee while Roger raped her. Then they left her in the bedroom, locking her in by inserting a butter knife in the door jamb. She immediately donned other clothing which she kept in John's bedroom, then left through the window, went to the next-door neighbor's house, and had the neighbor call a taxi to take her to her own family's home. Although the prosecutrix repeatedly stated that these events occurred on July 4, it seems clear that she meant July 6, 1984.

According to defense witnesses, the prosecutrix and appellant's family spent the Fourth of July recovering from hangovers resulting from a party which ended at 4:00 a.m. on the Fourth, and spent Thursday, July 5, in the same friendly fashion which characterized the relationship during June. In the late afternoon of Friday, July 6, 1984, appel-

lant called a taxi to take the prosecutrix to her mother's house to get her SSI money, with the understanding that she would return shortly to stay with appellant.

The taxi driver testified for the defense, stating that he had transported the prosecutrix between the two residences on many previous occasions, and that at 4:00 p.m. on Friday, July 6, when he took her from appellant's home to her family's home, there was nothing out of the ordinary in her appearance or behavior. The neighbor identified by the prosecutrix as being the woman who called the taxi denied that the prosecutrix had ever been in her house and denied that she had made the call for the prosecutrix. Appellant and his brother both categorically denied the occurrence of any such assault as that alleged by the prosecutrix. Appellant added that on Friday evening, after the prosecutrix had arrived home, she called him, told him she had a new boyfriend, would not be returning to live with him, and wanted her clothing back.

The prosecutrix's mother testified that when her daughter arrived home on Friday evening, she cried and told her about the rapes. About noon on Saturday, July 7, they brought a family friend to listen to the account and examine the bruises. They decided to call the police. When a state police officer responded, he advised them to go to the hospital, which they did around 7:00 p.m. The prosecutrix was examined, her bruises and bites were photographed, and swabs were taken. The laboratory tests for spermatazoa and foreign hairs were negative; no clothing had been submitted for testing. The laboratory criminalist testified that when samples are taken more than twenty-four hours after intercourse, it is common for the tests to be negative: thus the laboratory results neither corroborated nor undermined the allegations of rape. The emergency room doctor testified that in his opinion, to a reasonable degree of medical certainty, the bruises were caused by trauma which occurred between 24 and 48 hours prior to his examination of the prosecutrix. He also opined that the bruises and contusions, on her upper right arm, her upper left arm, her

lower left leg, her right thigh, and her right breast, could not have been caused by an accident or a fall.

The next day, Sunday, July 8, 1984, the prosecutrix, her mother, a friend, and other relatives drove to appellant's house to get the clothing she had left behind. The group stood on the front porch and spoke to appellant and his brother through the screen door, requesting that the clothing be returned. The prosecutrix, however, entered the house and went alone with appellant into his bedroom where she had left the clothes. He refused to give her the clothes, however, until she should pay his mother something toward her expenses of the previous month. The prosecutrix then left the house, and the visitors left without the clothing.

Four or five days later, Trooper Graham, who had visited in June, called upon appellant and convinced him to return the prosecutrix's clothing. Approximately five days after that, on July 17, 1984, appellant and his brother were arrested and charged with rape, simple assault, and false imprisonment.

Following a jury trial, appellant was convicted of all charges and was sentenced to serve eleven and one-half to twenty-three months imprisonment. Judgment of sentence was affirmed by the Superior Court, *Commonwealth v. McLain*, 377 Pa.Super. 654, 541 A.2d 1152 (1988), for the offer of proof in support of appellant's motion to present evidence of prior sexual relations with the prosecutrix stated only that the prior relations "might" explain the injuries, and counsel did not know what testimony appellant would present to support this possibility. We granted allocatur in order to review the trial court's application of the Rape Shield Law in light of this Court's holding in *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983).

In *Majorana*, the evidence of prior consensual intercourse had been offered "as a rebuttal to [the prosecutrix's] version of the act of intercourse and as an explanation for the existence of sperm in her vagina." *Id.*, 503 Pa. at 610, 470 A.2d at 84. The Court held that:

this case involves a single event described in two differing accounts by the protagonists and the Rape Shield Law is, therefore, inapplicable.

.... Where, as here, a defendant offers evidence of intercourse close enough in time to the act with which he is charged that it is relevant to explain the presence of objective signs of intercourse, the protections afforded to the complainant by the Rape Shield Law do not apply.

*Id.* Appellant would have us consider the prosecutrix's bruises and bite marks to be "objective signs of intercourse," as in *Majorana* we characterized the presence of sperm in the vagina. We cannot, for to do so, of course, we would have to accept the proposition, which we find incredible, that the prosecutrix voluntarily engaged in behavior which produced extensive injuries over most of her body. The injuries described by the doctor in this case were evidence of an assault, certainly not evidence of past consensual sexual conduct with the defendant.

Moreover, the trial court was correct in denying appellant's motion under the Rape Shield Law, for the argument presented to us—that the injuries were caused by "some bizarre consensual sexual behavior" between the prosecutrix and appellant—was not included in the offer of proof made at the time of trial pursuant to 18 Pa.C.S. § 3104(b). As the lower courts noted, when counsel presented his motion, he had no idea what testimony his client would present which would support the argument. Thus, we agree that the offer of proof was not sufficient on its face to require a hearing to determine the relevance and admissibility of evidence of prior sexual conduct of the prosecutrix, and the motion was correctly denied without a hearing.

Accordingly, we affirm the order of the Superior Court.

LARSEN and PAPADAKOS, JJ., join this Opinion in Support of Affirmance.

McDERMOTT, J., files an Opinion in Support of Reversal in which NIX, C.J., and ZAPPALA, J., join.

## OPINION IN SUPPORT OF REVERSAL

McDERMOTT, Justice.

I am unable to agree that the appellant was properly precluded from introducing evidence of prior relations between himself and the prosecutrix under the Rape Shield Law. In relevant part 18 Pa.C.S. § 3104(a) provides: ... past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue.... The instant facts demonstrate that both the victim and the appellant shared a room at the appellant's parent's house for approximately one month. During that time the victim's mother twice enlisted the aid of The Pennsylvania State Police to inquire as to her daughter's well being. After both visits the police determined that the victim was under no duress to remain and that she was voluntarily living with the appellant. As there was voluntary co-habitation I would conclude that consent was at issue and thus that the appellant falls squarely within the above exception to the Rape Shield Law.

NIX, C.J., and ZAPPALA, J., join in support of reversal.